## REID ET AL. v. GEOGHEHAN.

### April 23, 1836.

*Rule to show cause why a new trial should not be granted.*

In an action by the indorsee of a bill of exchange against the acceptor, where A, the drawer, is the indorser (having drawn the bill to his own order and then indorsed it to the plaintiff), A is a competent witness for the plaintiff to prove the handwriting of the acceptor. So is the indorser a competent witness for the holder of a promissory note to prove the handwriting of the drawer, in a suit by the holder or indorsee against the drawer.

Under the statute of limitations of the 27th of March 1713, the saving clause in the 5th section relative to, and in favour of, persons *beyond the sea*, &c. who become plaintiffs, embraces actions upon the case in *assumpsit*, although not therein expressly designated.

THIS cause was tried before PETTIT, *President*, and the verdict was for the plaintiff. The defendant obtained this rule to show cause why a new trial should not be granted, and assigned reasons hereinafter stated.

*Fallon* and *D. P. Brown*, for defendant, in support of the rule, cited, Herrick *v.* Whitney, 15 *Johns. Rep.* 240 ; Dickinson *v.* Prentice, 4 *Esp. Rep.* 32 ; Chandler *v.* Vilett, 2 *Saund. Rep.* 120, *and note* ; M'Culloch *v.* Huston, 1 *Dall.* 443 ; Richards *v.* Bickley, 13 *Serg. & Rawle* 395 ; Rotherow *v.* Elton, *Peake's N. P. Cases* 117 ; the 1st and 5th sections of the act of 27th March 1713, *for the limitation of actions* ; and the 3d section of the act of 28th May 1715, *relative to the assignment of promissory notes, &c., Purd. Dig.*

*J. A. Phillips*, for plaintiff, was requested by the court to confine his argument to the first of the points, as subsequently noticed. He cited, *Chitty on Bills* 399 ; *Starkie on Evidence, 4th part,* 299 ; Ludlow *v.* Union Insurance Company, 2 *Serg. & Rawle* 119 ; Juniata Bank *v.* Brown, 5 *Serg. & Rawle* 226 ; Bank of Montgomery County *v.* Walker, 9 *Serg. & Rawle* 229 ; Harley *v.* Emerick, *ante* 36 ; Gest *v.* Espy, 2 *Watts's Rep.* 265 ; Babb *v.* Clemson, 12 *Serg. & Rawle* 328.

The facts of the case, and the reasons filed for a new trial, are sufficiently stated in the opinion of the Court, which was delivered by

[Reid et al. v. Geoghehan.]

PETTIT, *President.*—This was an action of *assumpsit* brought to December term 1833. The first count of the declaration stated the defendant to be the acceptor of a bill of exchange, dated Dublin, January 13th, 1826, at thirty-one days, for 36 pounds, drawn on defendant by Thomas Morrison, payable to his own order, and indorsed by him and by Anthony Geoghehan. The second count stated the defendant to be the drawer of a promissory note, dated Dublin, December 23d, 1825, at two months, for 27 pounds 13 shillings and 10 pence, in favour of Thomas Morrison, and by him indorsed.

The cause was tried before me on the defendant's plea of *non assumpsit,* and *non assumpsit infra sex annos,* and the plaintiffs' replication of *assumpsit infra sex annos,* and that the plaintiffs when said bill and note were drawn, and when this action accrued, &c. were *beyond seas, &c.* The pleadings were informal, but no suggestion on that head was made at the time of the trial. A verdict was rendered in favour of the plaintiffs. The case is now before the court, upon a rule obtained by the defendant to show cause why a new trial should not be granted, on certain points reserved.

1. The only witness offered on the part of the plaintiff to prove the handwriting of the defendant was Thomas Morrison. His testimony was objected to by the defendants' counsel on the ground of *interest.* It was however received by the court, the point being reserved.

As drawer of the bill, and indorser of the note, he stood in the same relation to the defendant. If he was a witness in the one character, he was so in the other.

The general rules upon the subject of the *interest,* which exclude a person from giving testimony, are well setled. The proper application of them is not however always free from difficulty. It is now firmly established that the interest which disqualifies must be some legal, certain and immediate interest in the *result* of the cause or in the *record,* as an instrument of evidence. 2 *Stark. on Ev.* 744. It is not enough that there is a possible or even a probable interest. If there is any thing contingent in regard to it, it will not operate to the rejection of the witness. He can be pronounced incompetent only when the legal consequence of the verdict must necessarily better his situation, by securing an advantage or repelling a loss. He must either absolutely gain or absolutely lose by the event.

How then stands the indorser of a promissory note in relation to a suit by the indorsee against the drawer? By the verdict against

[Reid et al. v. Geoghehan.]

the drawer, the plaintiff is in no manner restrained as to his proceed-ing against the indorser. His remedy is complete against each, until satisfaction be actually obtained from one. He may abandon it as to either, and avail himself of it as to the other at his discretion. He is at entire liberty, after obtaining the verdict, to pursue or not to pursue the drawer, according to his own pleasure. The existing liability of the indorser is not necessarily decreased by the verdict against the drawer. However strong therefore may be the feeling of the indorser, founded upon a probability as to the plaintiff's course after a verdict, yet while the plaintiff is not committed by the verdict as to either drawer or indorser, the interest of the indorser cannot be said to be immediately certain and absolute. The wit-ness was therefore properly received, the matter suggested merely affecting his credibility, but not reaching his competency.

This disposition of the question renders it unnecessary to deter-mine whether the plaintiff here, in support of the testimony, could or could not, under the facts of the case, have resorted to the prin-ciple recognised in Ludlow *v.* The Union Insurance Company, 2 *Serg. & Rawle* 119, that a witness protected from an action by the statute of limitation, is competent.

The doctrine now asserted, was enforced by lord Kenyon in Dick-enson *v.* Prentice, 4 *Esp. N. P. Rep.* 32, and has been recognised as sound law by *Chitty,* in his *Treatise on Bills* 399; and *Starkie* in his work on *Evidence, 4th part,* 299, and may be taken to be the settled rule of the English courts. A *dictum* of chief justice Parsons to the contrary, in Rice *v.* Stearns, 3 *Mass. Rep.* 225, and a short note of the point as ruled the other way in Herrick *v.* Whitney, 15 *Johns. Rep.* 240, are entitled to respectful consideration. But where the principle of the law is clear, a conflict of opinion need not be per-mitted to embarrass the question. It is thought, too, that the supreme court of our own state adopted the reason of the rule, when in Enters *v.* Peres, 2 *Rawle's Rep.* 279, they held that in an action on a bond accompanied by a mortgage, a subsequent mortgagee was a competent witness for the defendant.

2. Another point reserved arises upon the construction of the statute of limitation.

Our statute was passed on the 27th of March 1713, *Purd. Dig.* 581. In the *limiting clause* in the 1st section, actions upon the case generally are expressly embraced, while in the *saving clause* in the 5th section, relative to persons *beyond the sea,* &c. no mention is

[Reid et al. v. Geoghehan.]

made of actions upon the case, except *actions upon the case for words.* Hence it was argued upon the trial, that in an action upon the case in *assumpsit,* such as this, the plaintiff, who had been beyond the sea, was not entitled to the benefit of the saving clause.   This objection to the plaintiff's recovery was however overruled.

It is to be remarked that the two sections above referred to are exact transcripts of provisions in the statute of 21 *Jac.* 1, *c.* 16, passed about ninety years before the date of our law.   Upon the construction of the British act, the very question was raised in the case of Chandler *v.* Vilett, 2 *Saund. Rep.* 120, 22 *Car.* 2, when the court of king's bench decided, "that the action on the case on *assumpsit* was within the equity of the saving clause of the act, though it be not expressed ; for the intention of the statute was not to preserve a trivial action on the case for slanderous words, and not to save an action for a real duty."   Six years afterwards the same point was formally submitted to the notice of the court of common pleas in Crozier *v.* Tomlinson, 2 *Mod. Rep.* 71, when a similar judgment was pronounced, the court saying that " when the scope of an act appears to be in a general sense, the law looks to the meaning, and it is to be extended to particular cases within the same reason."   The construction thus authoritatively given to the statute of *James,* remains undisturbed in the English courts to the present time.   Both of the cases above mentioned were ruled more than twenty years before the legislature of Pennsylvania adopted the act which is in force with us.   It is to be assumed then, that in using the precise language of the British parliament, they also adopted the construction which had been solemnly given by well known adjudications of the proper courts.   So uniform has been the understanding of the profession in Pennsylvania upon this subject, that in a period of more than a hundred years, it nowhere appears that the construction of the act has ever been brought into question in the supreme court.   Where our own is in the same words as the English law, a fixed and received construction of the British statute is, upon a familiar and sound principle, made a part of our own statute law.

Rule discharged.