# Donaldson, Insurance Commissioner, *v.* Fortna, Appellant.

*Insurance—Insurance commissioner—Fire insurance company—Mutual company—Insolvency—Liquidation — Insurance commissioner as liquidator—Powers—Suit to recover assessments—Affidavit of defense.*

In an action by the insurance commissioner, acting as liquidator in closing the business of an insolvent fire insurance company, an affidavit of defense is insufficient which does not deny the insolvency of the company, or the right of the insurance commissioner to ascertain the proportionate share and levy assessments against stockholders, or that defendant received notice of the assessment, but confines the defense to the failure of the plaintiff to attach to his statement of claim, copies of the book entries showing the details of the alleged claim, including an itemized statement of the alleged losses, for which assessments against the defendant were levied.

The insurance commissioner having been vested by law with the authority and power to levy the assessments, a legal presumption arises in favor of their correctness.

The records of the insolvent company were, at least, quasi public records in the custody of the State, and any information they might contain of benefit to defendant in seeking to defend against the claim was, at all reasonable times, available to her or her counsel.

It is the duty of a defendant who undertakes to file an affidavit of defense to the averments of the statement of which the defendant may have no personal knowledge to secure this knowledge, if by any reasonable effort he may acquire such information, which would enable him to admit the fact averred or clearly to deny it. Where the defendant had access to the records of the insurance department, she could have secured the necessary information to answer the allegations of the plaintiff, and, upon her failure so to do, judgment is properly entered against her, for want of a sufficient affidavit of defense.

KELLER, J., dissents, in which PORTER, J., concurs.

Argued November 9, 1920. Appeal, No. 251, Oct. T., 1920, by defendant, from judgment of C. P. Berks County, Oct. T., 1919, No. 79, for plaintiff, for want of a sufficient affidavit of defense in the case of Thomas B. Donaldson, Insurance Commissioner, as Such Statutory Liquidator of the Dissolved Central Mutual Fire Insurance Company v. Emma L. Fortna. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit to recover assessments levied for losses in a dissolved mutual fire insurance company. Before WAGNER, J.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

The court made absolute the rule and entered judgment against defendant for $745.50. Defendant appealed.

403, (1921).]    Assignment of Error—Opinion of the Court.
    *Error assigned* was the order of the court.

*Walter B. Freed,* and with him *Cyrus G. Derr,* for appellant.—To entitle plaintiff to judgment for want of a sufficient affidavit of defense the statement of claim must show sufficient facts fully and properly set forth. The failure of plaintiff to include a detailed statement of assessments and expenses rendered the statement defective: Acme Manufacturing Company v. Reed, 181 Pa. 382; Chestnut Street National Bank v. Ellis, 161 Pa. 244; Insurance Company v. Vitale, 10 Pa. Superior Ct. 157; Sparks v. Glass Company, 16 Pa. Superior Ct. 119; Practice Act of 1915, P. L. 483, section 5; Bill Posting Sign Co. v. Jermon, 27 Pa. Superior Ct. 174.

*Robert Grey Bushong,* for appellee, cited: Kress House Moving Co. v. George Hogg Co., 263 Pa. 191; Insurance Co. v. Vitale, 10 Pa. Superior Ct. 157; Sparks v. Glass Co. 16 Pa. Superior Ct. 119.

OPINION BY HEAD, J., April 26, 1921:
    In October, 1916, the insolvency of the Central Mutual Fire Insurance Company was judicially ascertained and a decree was entered dissolving the corporation and ordering the liquidation of its business. The effect of this decree was to call into activity the powers vested in the insurance commissioner of Pennsylvania by the provisions of the Act of June 1, 1911. At the time of the entry of the decree referred to the defendant was a member of said company and held a policy of insurance issued by it, then in full force. When she applied for and received her policy she signed a written obligation which became a part, perhaps the chief part, of the consideration paid by her for the policy. In that obligation she declared, inter alia, "I promise to pay to the said company such sum or sums of money, and at such time or times as may be required by the board of directors, for the purpose of paying losses and the necessary expenses

of said company, payable within thirty days after notice at the company's office at Lebanon or to any authorized agent."

The statute referred to provides, inter alia, that when an order for the liquidation of the business of such an insurance company shall have been made, "Such liquidation shall be made by and under the direction of the insurance commissioner who shall be vested by operation of law with title to all of the property, contracts and rights of action of such corporation." We apprehend that the words "liquidate" and "liquidation," used in the statute, need no interpretation or judicial construction. In the use of those words the legislature simply directed its officer to gather together the assets of the defunct company, convert them into cash and apply their proceeds to the payment of the expenses of liquidation and the discharge, in whole or in part, of the debts due to the creditors. Manifestly the obligation signed by this defendant, with others of like character, signed by other policyholders, constituted the real assets of the company.

In the discharge of his official duties, the insurance commissioner levied against this defendant three separate assessments on the several dates set forth in the statement. Notice of each assessment, with the amount thereof, was duly sent by first-class mail to the defendant. Upon the reverse side of this notice of assessment there was shown "A statement of the unpaid losses and the assessment plan. Assessments have been levied upon all known and located policyholders of record as of the time of the occurrence of each loss......If any error is disclosed the liquidator will be glad to adjust it if full facts are given." The defendant having neglected or refused to pay any of these three assessments, this suit was brought by the insurance commissioner to enforce such payment.

The record seems to show that the defendant has filed in the court below three alleged affidavits of defense.

In no one of them does she pretend to exhibit any kind of a defense on the merits to the claim resting on the obligation she signed.   She confines her effort to the repetition of the statement that the plaintiff has shown no cause of action against her, cognizable by a court, be-. cause he has failed to attach to his statement of claim "copies of the book entries showing the details of the plaintiff's alleged claim, including an itemized statement of the alleged losses for which said assessments against the defendant are levied, with the names of claimants, accounts, credits, etc., and a list of the members and the amounts of insurance liable for such assessments."   She does not, of course, deny the insolvency of the company, and, as a consequence, her ultimate responsibility to answer for her proportionate share of its *debts.*   She *does* not deny that the plaintiff is vested, by the terms of the statute, with the right to ascertain that proportionate share and levy assessments against the policyholders.   She does not deny that she received due notice of these assessments and does not aver that she made any complaint whatever concerning their correctness.   She does not deny that during the business life of the company it was her company and its executive officers were her agents.   She does not deny that she had, at all times, access to the books, papers and records which her own agents were making.   She does not deny that, since the insolvency of the company, those records have become at least quasi public records in the custody of officers of the State and that any information they might contain of benefit to her in seeking to defend against this claim was, at all reasonable times, available to her or her counsel.

Now it is the opinion of this court that with the record in this condition, the learned court below was right in making absolute a rule for judgment for want of a sufficient affidavit of defense.

We advert but for a moment to one other consideration, not without weight, in the consideration of this

appeal. It must be conceded the insurance commissioner was vested by law with the authority and power to levy such assessments as were here made. That being true, it is quite clear, both on reason and authority, that a legal presumption arises in favor of the correctness of such assessments. Many decisions have been cited in the two careful opinions filed by the learned court below to support this proposition. In Insurance Company v. Vitale, 10 Pa. Superior Ct. 157, this court, speaking by SMITH, J., said: "The presumption of law is in favor of the regularity of the proceedings to assess and the legality of the assessment, and this presumption cannot be overcome by a general indefinite denial." The exact language quoted is incorporated in the opinion of this court in Tanner v. Weber, 59 Pa. Superior Ct. 14, and TREXLER, J., speaking for the court, cites many other authorities to the same effect.

The conclusion that necessarily results from the line of reasoning we have adopted seems to us to be in entire harmony with the spirit at least of the latest utterance of the Supreme Court. In Buehler v. United States Fashion Plate Company, 269 Pa. 428, the present Chief Justice handed down an opinion, which declares in the plainest of language what is the duty of a defendant who undertakes to file an affidavit of defense, in dealing with averments of the statement of which the defendant may have no personal knowledge at the time he makes the affidavit. If by any reasonable effort he may secure the knowledge which would enable him to admit the fact averred or clearly deny it, it becomes his duty to acquire the information that might thus be obtained and make his affidavit accordingly.

The substance of everything we have said is to be found in the careful opinions filed by the learned court below which furnish forceful reasons for the conclusion he reached. The assignments of error are overruled.

Judgment affirmed.

DISSENTING OPINION BY KELLER, J.:

The importance of this case to the holders of policies of mutual insurance constrains me to dissent from the opinion of the majority and to set forth my reasons therefor at some length.

The Act of June 1, 1911, P. L. 599, authorizes the Court of Common Pleas of Dauphin County, for cause shown, to order the liquidation of the business of any domestic insurance corporation, in which case such liquidation shall be made by and under the direction of the insurance commissioner; but the general oversight and direction of the acts of the insurance commissioner as such liquidator are committed to said court which must approve the compensation of the special deputy commissioners, counsel, clerks and assistants employed by him in connection therewith and also all expenses of taking possession of and conducting the liquidation of such corporation (section 4). The commissioner's account as such liquidator must also be filed in said court which is to be "preceded" [proceeded] with and passed upon as other accounts are passed upon in said court and the funds in hand are to be distributed as decreed by said court (section 7).

It is apparent from the foregoing that the insurance commissioner, as such liquidator, acts very largely under the control and direction of the Court of Common Pleas of Dauphin County, just as formerly a receiver appointed to liquidate the affairs of an insolvent insurance corporation so acted.

Under the practice in force before the Act of 1911, supra, two kinds of assessments could be levied on policyholders of mutual insurance companies for losses incurred during their membership in such companies: The one was levied by the directors of a going and apparently solvent company, and all that had to be set forth in the plaintiff's statement in a suit to enforce such assessment was an averment that the losses and expenses of the plaintiff company during the time de-

fendant's policy was in force necessitated the assessment, that it was duly made by the board of directors on a day named, and that due notice thereof had been given the defendant. A verbatim copy of the resolution and an itemized statement of the losses and expenses necessitating the assessment were not required: Sparks v. Flaccus Glass Co., 16 Pa. Superior Ct. 119; Insurance Co. v. Vitale, 10 Pa. Superior Ct. 157; for by section 56 of the Act of May 1, 1876, P. L. 53, the certificate of assessment in such circumstances duly signed by the president and attested by the secretary is prima facie evidence thereof: Peoples Mutual Fire Insurance Co. v. Groff, 154 Pa. 200. Such an assessment might be sued for by either the company or by a receiver appointed after the levy.

The other was an assessment levied by the receiver of an insolvent company under order of the court appointing him. To secure this order the receiver set forth in his petition asking for such authority all the facts necessary to enable the court intelligently to make such order, with full details as to the unpaid losses, their date of occurrence, the policies in force at the time and the holders liable to contribute thereto, and any other facts necessary to inform a policyholder as to his liability for the assessment to be levied. When an order authorizing such assessment was made by the court, the receiver could sue thereon and in such case the order of the court was conclusive as to the validity and the amount of the assessment: Capital City Mutual Fire Ins. Co. v. Boggs, 172 Pa. 91; Stockley, Receiver, v. Riebenack, 12 Pa. Superior Ct. 169; Stockley, Receiver, v. Hartley, 12 Pa. Superior Ct. 628. But the plaintiff's statement in such action had to include a full copy of the record of the proceedings leading up to the order for assessment: Schofield, Receiver, v. Lafferty, 17 Pa. Superior Ct. 8; and was defective and insufficient unless accompanied by a full copy of such record if suit was brought in another

county: Stockley, Receiver, v. McClurg, 14 Pa. Superior Ct. 629.

In the present case the assessments in suit, notwithstanding the inadvertent statement of the learned court below, were not levied by the insurance company, but by the insurance commissioner as liquidator. We have here neither a certificate of such assessments signed by the president and attested by the secretary of the company, as provided by the Act of 1876, nor any order of the Court of Common Pleas of Dauphin County authorizing them.

In the plaintiff's amended statement, which must be held to have superseded and taken the place of the original statement (Kay v. Fredrigal, 3 Pa. 221, p. 223; Encyclopedia of Pleading and Practice, vol. 1, p. 625; State v. Simkins, 42 N. W. 516—Iowa),—for it is not an addition to or amendment of the original statement but a pleading complete in itself which does not refer to or adopt the original as part of it,—we have no details as to the losses, when they occurred, their amount, the number of assessable policies in force at the time and the insurance covered thereby or any data by which the defendant could assure herself that the amount claimed is justly due and owing—nothing but the bare assertion that the insurance commissioner levied certain assessments upon the defendant on the dates noted—no record of the Court of Common Pleas of Dauphin County authorizing such levy.

Speaking for myself, I do not believe that the Act of 1911, supra, gives the insurance commissioner as such liquidator any authority to levy assessments on policyholders without a petition to and order of the court, which proceedings should be fully set out in the plaintiff's statement if suit is brought outside of Dauphin County; but if it does, then I hold that in his levy of such assessment the liquidator must set forth in detail sufficient facts to justify the assessment, just as he would be required to do in a petition to the court for

authority to levy such assessment, or he must aver such facts in his statement as justify his claim against the defendant; in other words, the statement must be self-supporting and not put the defendant to extraneous research to find out if he legally owes the money claimed.

The mutual insurance policyholder may be compelled to pay for losses of which he had no notice, incurred nearly a score of years before and many years after he ceased to be a policyholder, and when other formerly solvent policyholders are dead and their estates settled, so that practically the entire loss may fall on him; providing only suit is brought within six years after the date of the decree authorizing the assessment: Schofield v. Turner, 213 Pa. 548. It is, therefore, not too much to require of a receiver or liquidator in such a suit that he set forth fully in his statement the facts on which his assessment is based, in other words, "the material facts on which the party pleading relies for his claim": Act of May 14, 1915, P. L. 483.

Nothing of the kind was done in this case; there was no order of the Court of Common Pleas of Dauphin County, no details of any assessment, no facts averred from which the liability of the defendant could be determined.

I think the statement filed was insufficient and would, therefore, reverse the judgment and direct judgment to be entered for the defendant, unless the plaintiff within fifteen days filed a full, sufficient and self-supporting statement of claim.

PORTER, J., concurs in this dissent.