## Bisbing *versus* Graham.

The *assignment* of a promissory note *without recourse*, instead of merely endorsing it in blank, is not such a departure from the usual course of business, as to put the transferree on inquiry as to equities between the original parties.

The fact of the transferree being the son-in-law of the payee or endorser, is not sufficient to authorize a jury to presume fraud, as between the two.

The wife of the payee is a competent witness for a subsequent holder, *in support* of the note.

In the case of a note *lost* after suit brought upon it, it is not necessary for the plaintiff to give indemnity against it, before judgment; the court may, however, restrain the *execution*, till indemnity be given.

ERROR to the District Court, *Philadelphia*.

This was an action by Graham, as endorsee of Paynter *v*. Bisbing, the drawer of a promissory note, as follows :

*March* 11, 1843.

Four months after date, I promise to pay to David Paynter or to his order, three hundred and six dollars, for value received, without defalcation.          SAMUEL BISBING.

It was endorsed by Paynter, the payee, to the plaintiff, in these words :

For value received, I assign to William Graham, or order, all my right, title and interest in the within note, without recourse.

DAVID PAYNTER.

Special pleas were filed.

The history of this suit was stated to be as follows :

The plaintiff in error, and Paynter, the endorser of the note on which suit is said to be brought, owned a vessel *jointly* together. A dispute about the possession was brought in the United States District Court.    A settlement in writing finally took place, dated March 11th, 1843.    The defendant gave a note for the balance ascertained, with the express agreement in writing, that if any other claims than those enumerated in said agreement, should be brought against the schooner mentioned in their agreement, they were to be paid by the plaintiff in error, and deducted from the amount of said note ; and the plaintiff in error averred that such subsequent payment, to the amount of $176.69 were presented, and $146 of which were paid by him, and he was responsible for the balance of the said $176, which should have been allowed him as a set-off on the trial below.    And he further averred that the said note was fraudulently endorsed over to Graham, defendant in error, the son-in-law of Paynter, without consideration, to prevent said set-off: and the plaintiff in error also averred that Graham knew all the above facts at the time the note was endorsed over to him, and that he took it under suspicious circumstances, it being endorsed

[Bisbing *v.* Graham.]

by Paynter without recourse, and that should have led him to inquiry.

Sarah Paynter, the wife of D. Paynter, was examined upon a rule, and her deposition read at the trial [although objected to], in which she stated that she was the owner of the one-half part of said schooner, and that she sold her note to Graham.

The note was not produced at the time of her examination before the magistrate under the rule to take her deposition, and although the objection was then taken by defendant, no proof was offered at that time of its being lost. Sarah Paynter did not pretend she had ever endorsed the note, although she alleged it was her's.

On the trial, the testimony of counsel was given, that the note was mislaid since suit brought; but no indemnity was offered against the note.

A nonsuit was moved for, on the ground that no recovery can be had upon a lost note without at least proffer of indemnity. The judge overruled the motion. No consideration was proved to have passed between endorser and endorsee, except what was contained in Sarah Paynter's deposition. Defendant's counsel insisted upon his equities of set-off between maker and payee, which was overruled by judge. Verdict for plaintiff below for $389.38.

Assignment of errors:

1. That the judge charged that the plaintiff below might recover notwithstanding her note was mislaid.

2. That the judge charged that the plaintiff below might recover, notwithstanding the note was mislaid, if the jury were satisfied that the note was in existence and lost since the trial had been brought, even without indemnity offered.

3. That the judge told the jury that the plaintiff below might recover upon a lost note, not produced upon the trial, and without any indemnity offered at any time.

4. That the judge told the jury that the plaintiff below might recover upon a note lost or mislaid, if they were satisfied that the said note was in existence and lost since the suit was brought, without offering indemnity.

5. Because the judge told the jury that the plaintiff has a right to recover notwithstanding any equities between Paynter and Bisbing—Graham being son-in-law of Paynter—the note having been sold by Mrs. Paynter and endorsed by Paynter without recourse—which two latter facts, the jury were told by the judge below, were neither of them facts which ought to have put the plaintiff on inquiry, and although the plaintiff in error had called upon defendant in error before trial to prove consideration.

6. Because Sarah Paynter's deposition was admitted to be read to the jury.

7. Because no consideration was received for said note by Payn-

[Bisbing *v.* Graham.]

ter, the endorser, nor proved to have been received by any one, except Sarah Paynter.

8. Because the testimony of John S. Burns was improperly excluded.

Error was also assigned to the admission of the testimony of counsel.

*H. Hubbell* and *W. Badger,* for plaintiff in error, that indemnity should be given when the note sued is lost : 7 *B. & Cress.* 90 ; 14 *E. C. L. R.* 20 ; 22 *do.* 372 ; 2 *Camp.* 211, 381 ; *Byle on Bills* 283–6 ; 4 *Esp. Rep.* 159 ; 3 *Yeates* 442 ; 16 *Vesey* 430 ; 1 *Nott's C. N. P.* 144 ; 6 *Esp. Rep.* 76 ; 6 *Serg. & Rawle* 537 ; 8 *do.* 328.

As to 5th assignment : 5 *Wend.* 20 ; 12 *Pick.* 545 ; 6 *Mass. Rep.* 46 ; 2 *Wash. C. C. R.* 152 ; 3 *Watts* 25 ; 4 *Bin.* 366.

*E. D. Ingraham,* for defendant, as to the matter of indemnity, and that it is in sufficient time, if given before taking out execution : 3 *Yeates* 442 ; 8 *Serg. & Rawle* 328 ; 2 *Camp.* 214 ; 4 *Bing.* 273 ; *Chitty on Bills* 290 *Ed. of* 1839 ; 16 *Vesey* 430.

As to admission of Sarah Paynter : 2 *Starkie's Rep.* 334 ; 1 *Miles* 204 ; 3 *Mass. Rep.* 225 ; 8 *Barr* 468.

The opinion of the Court was delivered, February 19, 1850, by

ROGERS, J.—Had suit been brought by Paynter, the payee of the note, it is beyond question, the maker would have been liable to set-off, under the agreement given in evidence. But the note being a negotiable instrument, the doubt is whether Graham, to whom it is endorsed, be a *bona fide* holder, without notice, and, as such, not affected by the equities duly existing between the original parties. That Graham knew of the agreement between Paynter and Bisbing was not pretended ; at least, there is no proof of it ; nor is there any proof from which fraud can be inferred. · At the trial, the cause was not put on these grounds, but it was contended that, inasmuch as Graham, the endorsek, was the son-in-law of Paynter, the payee, and the assignment was made out of the usual course of business, and without recourse, there was enough to put him on inquiry, and consequently he stood in no better position than the payee. If the premises are admitted, the conclusion is inevitable. But, taken separately, the objections, as will be shown hereafter, amount to nothing ; nor are they more to be regarded when taken together ; for, if you add nothing to nothing, *ad infinitum,* it is still nothing. The fact that Graham was the son-in-law of Paynter weighs nothing in the scale, because a son-in-law, as such, is not bound to know that his father-in-law meditates a fraud, by a plain and palpable violation of his agreement. Nor is the fact that the transfer of the note assumes the form of an ordi-

[Bisbing *v.* Graham.]

nary assignment, such a departure from the usual course of business, as to put the endorsee on his guard against the endorser. Although a blank endorsement in our commercial towns is the usual mode, yet in the country it is so frequently otherwise that it seldom if ever provokes inquiry or observation. That it is made payable without recourse, produces no effect, is ruled in Epler *vs.* Funk, 8 *Barr* 468. In that the court properly ruled there was nothing proved in the case to put the endorse upon inquiry. That is the only question submitted to them on this head.

Exception is taken to the admission of Sarah Paynter, wife of David Paynter, the payee endorser, as a witness. She stands, as is conceded, in the same position with her husband. If he is competent, she is so also, and *vice versa.* That the husband is competent, is ruled in Epler *v.* Funk, 8 *Barr* 468; on the authority of Barnes *v.* Ball, 1 *Mass. Rep.* 73, and Rice *v.* Stearns, 3 *Mass. Rep.* 225. When an endorser is released, as here, he is competent, as is there expressly held, not to impeach, it is true, but to enforce payment of the note. For this purpose she was offered, and properly admitted. But was the court bound to non-suit the plaintiff on the ground that no action can be sustained against the maker of a lost note, without he proffers an indemnity? That the defendant is entitled to indemnity, before he can be compelled to pay, I have no doubt; for it may be, that the note was endorsed in blank by Graham, and is now in the hands of a holder for value. The time of the endorsement does not usually appear on the bill. This is a contingency against which the maker is entitled to indemnity. The maker ought not to encounter any risk, as he is in no default. The inconvenience, if any, is one to which the holder has exposed himself, arising, perhaps, from his own carelessness, or, as would appear, from the neglect of his agent. In this, all the authorities to which I refer generally agree. But the question recurs, is the failure to indemnify in bar of the action, or, is it a prerequisite merely to the execution to enforce payment of the judgment? In the absence of all direct authority, in this state at least, I incline to the latter view of the case. However the law may be, as to suit brought to recover on a lost note, (and I see no reason why there should be any difference,) we are of opinion that, when the note is lost after the commencement of the action, it is no objection to the rendition of judgment. Justice may be effectually administered by restraining the plaintiff from issuing his execution, without proper indemnity be given. This is an equitable power vested in the courts, which will take care to do equity, having a proper regard to all the circumstances of each case. It was formerly supposed the courts of this State could not do complete equity, having no power over the costs, which were in all cases to be determined by the event. But this was a narrow and contracted view of the law, long since exploded; and has now, happily, no

[Bisbing *v.* Graham.]

place in our system of jurisprudence.   In cases depending on principles of equity, the courts have, in substance, the powers of a Court of Chancery, to be administered with the machinery, (sometimes clumsy, it is true,) of common law forms.

The judgment is affirmed, the record remitted to the District Court, with directions to exact indemnity before execution is permitted to issue.